**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SEARS, ROEBUCK AND CO | : | CIVIL ACTION |
| 3333 Beverly Road, Hoffman Estates, Illinois. | : | |
| | : | |
| v. | : | NO. 02-CV-3461 |
| | : | |
| ONE BEACON INSURANCE GROUP | : | JURY TRIAL DEMANDED |
| 1 Beacon Street, Boston Massachusetts | : | |
| | : | |
| and | : | |
| | : | |
| WINSTON FURNITURE COMPANY, INC. | : | |
| Suite 700, One Independence Place, | : | |
| Birmingham, Alabama | : | |

**O R D E R**

AND NOW, this         day of                  , 2004, upon consideration of plaintiff, Sears,

Roebuck and Co.'s Motion for Partial Summary Judgment, with supporting memorandum of law,

and the response of defendant, One Beacon Insurance Group, it is hereby ORDERED that Summary

Judgment is GRANTED in favor of Sears and against One Beacon on Counts I and II of the

Complaint. One Beacon shall assume the defense of Sears in the underlying action, without

reservation of rights, and pay Sears' legal fees and costs in defense of the underlying action, from

October 6, 2000 until One Beacon assumes Sears' defense.

BY THE COURT:

_____

                                                              J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEARS, ROEBUCK AND CO | : | CIVIL ACTION |
| 3333 Beverly Road, Hoffman Estates, Illinois. | : | |
| | : | |
| v. | : | NO. 02-CV-3461 |
| | : | |
| ONE BEACON INSURANCE GROUP | : | JURY TRIAL DEMANDED |
| 1 Beacon Street, Boston Massachusetts | : | |
| | : | |
| and | : | |
| | : | |
| WINSTON FURNITURE COMPANY, INC. | : | |
| Suite 700, One Independence Place, | : | |
| Birmingham, Alabama | : | |

## PLAINTIFF'S, SEARS, ROEBUCK AND CO.
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## AGAINST DEFENDANT, ONE BEACON INSURANCE GROUP

Plaintiff, Sears, Roebuck and Co., ("Sears"), by and through its undersigned counsel, moves for summary judgment on Counts I and II of the Complaint against defendant, One Beacon Insurance Group, ("One Beacon"), and avers as follows:

1.      This is a motion to enforce One Beacon's duty to defend Sears in an underlying tort suit, under a policy of insurance, issued by One Beacon, under which Sears qualifies as an additional insured pursuant to a vendor's endorsement. A true and correct copy of Sears' Complaint, (without Exhibits), is attached as Exhibit A.

2.      Sears is asking the Court to grant summary judgment on Count I, (declaratory judgment), and Count II, (breach of contract).  Count III sounds in "Bad Faith," under 42 Pa. C.S.A §8371 and its resolution is for another day.

3.      This matter arises out of another civil action currently pending in the United States District Court for the Eastern District of Pennsylvania under the caption, <u>Anne Dockins and Leolin Dockins, h/w vs. Sears, Roebuck and Co.</u>, Civil Action No. 98-CV-249, ("the underlying action"). A true and correct copy of the Complaint in the underlying action is attached as Exhibit B.

4.      The Complaint in the underlying action alleges that plaintiff, Anne Dockins, ("plaintiff"),  sustained personal injuries on January 23, 1996,  when she was attempting to arise from a Canterbury chair on display in Sears' Wilmington, Delaware store. (Exhibit B).

5.       The Complaint in the underlying action alleges negligence against Sears for allowing the aforesaid Canterbury chair to remain on display in a defective condition.  For instance, the Complaint states:

> The aforesaid accident was caused by the negligence, carelessness, recklessness, wilfulness and wantonness of the defendant and consisted of the following:
>
> (a)      failing to maintain the said chair in a condition which would protect and safeguard persons attempting to get up from said chair;
>
> (b)      permitting the said chair to remain in a condition so as to constitute a menace, danger, nuisance, snare and trap to persons, business invitees, guests and/or pedestrians attempting to get up from said chair'
>
> (c)      failing to have said chair inspected at reasonable intervals in order to determine if it was in a safe condition and/or location;

(d)    failing to give notice or warn persons, business invitees, guests and/or pedestrians utilizing such chair of the dangerous and perilous condition of the chair;

(e)    disregarding the rights and safety of the plaintiff utilizing said chair.

(Exhibit B).

6.    Sears obtained the subject vendor's endorsement pursuant to a contract with defendant, Winston Furniture Company, Inc., ("Winston"), under which Winston agreed to supply certain products to Sears, including Canterbury chairs, and procure insurance coverage for Sears.

7.    A true and correct copy of the vendor's endorsement is attached as Exhibit C.

8.    The vendor's endorsement provides coverage for injuries arising out of the products supplied by Winston, i.e., the Canterbury chair. The vendor's endorsement states:

WHO IS AN INSURED (section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions....

(Exhibit C).

9.    Sears submitted a coverage claim to One Beacon by October 6, 2000 correspondence.

10.    Following Sears' notice of claim, One Beacon denied the existence of the vendor's endorsement.

11.    One Beacon continued to deny the existence of the vendor's endorsement for more than two and one half years.

12.     One Beacon denied the existence of the vendor's endorsement in its answer to the Complaint. (Docket 02-CV-03461, no. 5).

13.     In order to force One Beacon to admit to the existence of the vendor's endorsement and Sears' status as an additional insured, Sears conducted extensive written discovery against One Beacon. For instance, Sears served One Beacon with a pre-litigation subpoena for the vendor's endorsement and other policy documents. Following the commencement of litigation, Sears served One Beacon with requests for admission, interrogatories and document requests.

14.     One Beacon resisted answering Sears' discovery, thus necessitating two discovery motions: Sears filed a Motion to have One beacon held in contempt for failing to comply with the aforesaid subpoena, and the Court issued the December 18, 2001 Order, requiring One Beacon to comply with the subpoena. (Docket 98-CV-00249, no. 11); Sears also filed a motion to compel One Beacon to answer Sears' interrogatories and document requests, which the Court granted by March 6, 2003 Order, (Docket 02-CV-3535, no. 4).

15.     Winston was named as a defendant in this action because One Beacon denied the existence of the vendor's endorsement.

16.     In June, 2003, One Beacon finally admitted that it did issue the vendor's endorsement naming Sears as an additional insured. See One Beacon's May 22, 2003 correspondence, (post-marked June 13, 2003), attached as Exhibit D.

17.     Although Sears was finally able to compel One Beacon to admit to the existence of the vendor's endorsement, One Beacon continues to refuse to provide coverage pursuant to the terms of the vendor's endorsement.

18.     Instead of providing coverage in accordance with the vendor's endorsement,  One Beacon attempted to negotiate Sears into accepting coverage limitations that do not exist in the

vendor's endorsement. For instance, One Beacon offered to defend Sears subject to a reservation of rights under which One Beacon would withdraw from defending Sears and deny indemnity unless the facts in the underlying action establish that the plaintiff's injuries were caused by a product defect. (Exhibit D).

19.     One Beacon's vendor's endorsement does not contain the word, "defect." Rather, the endorsement provides coverage for injuries arising out of the products.

20.     One Beacon's latest position therefore, is that the Court should re-write the vendor's endorsement to add the word, "defect," in order to limit coverage to injuries arising out of product defects.

21.     Courts in Pennsylvania and other states broadly interpret the phrase, "arising out of," as used in insurance policies: "Arising out of" means casually connected with, not proximately caused by, incidental to or originating from. "But for" causation, i.e., a cause and result relationship, satisfies the "arising out of" provision of the policy.

22.     Courts have interpreted the identical vendor's endorsement that One Beacon uses here: Courts hold that coverage is owed for injuries originating from or incidental to the product even if not proximately caused by the product. Courts expressly state that coverage is not limited to claims of a product defect and is owed where the insured's negligence is found to be a proximate cause of the injuries, as long as the injuries arise out of the product.

23.     The plaintiff's alleged injuries occurred as she was sitting in the Canterbury chair, attempted to rise and the chair slid out from under her. (Exhibit B). Plaintiff's alleged injuries are incidental to, originate from and would not have occurred but for her use of the Canterbury chair. Therefore, plaintiff's alleged injuries arise from her use of the Canterbury chair.

WHEREFORE, plaintiff, Sears, Roebuck and Co. respectfully requests that the Court issue the proposed Order, granting summary judgment in favor of Sears and against One Beacon on Counts I and II of the Complaint, and requiring One Beacon to defend Sears in the underlying action, without reservation of rights, and pay Sears' legal fees and costs in defense of the underlying action, from October 6, 2000 until One Beacon assumes Sears' defense.

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY

BY: _____

       Robert L. Sanzo, Esquire
       *Attorneys for Plaintiff,*
       *Sears, Roebuck and Co.*

DATE: _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

SEARS, ROEBUCK AND CO          :          CIVIL ACTION
3333 Beverly Road, Hoffman Estates, Illinois.    :
                                        :
              v.                        :          NO. 02-CV-3461
                                        :
ONE BEACON INSURANCE GROUP     :          JURY TRIAL DEMANDED
1 Beacon Street, Boston Massachusetts     :

              and

WINSTON FURNITURE COMPANY, INC.
Suite 700, One Independence Place,
Birmingham, Alabama

**PLAINTIFF'S, SEARS, ROEBUCK AND CO. MEMORANDUM**
**OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

   Plaintiff, Sears, Roebuck and Co., ("Sears"),  submits this memorandum of law in support

of its motion for partial summary judgment.

**I.      BACKGROUND**

   On May 30, 2002, Sears filed a Complaint for declaratory judgment, breach of contract and

bad faith, against One Beacon Insurance Group, ("One Beacon").[1]  (Exhibit A). One Beacon served

its answer with affirmative defenses on approximately July 29, 2002. (Docket 02-CV-03461, no.5).

Sears moves for summary judgment on the counts for declaratory judgment and breach of contract.

   This matter arises out of another civil action currently pending in the United States District

Court for the Eastern District of Pennsylvania under the caption, <u>Anne Dockins and Leolin Dockins,</u>

<u>h/w vs. Sears, Roebuck and Co.</u>, Civil Action No. 98-CV-249, ("the underlying action"). (Exhibit

B). The Complaint in the underlying action alleges that plaintiff, Anne Dockins, ("plaintiff"),

---

[1]       The complaint also contains counts against Winston Furniture Company, Inc. for declaratory
judgment and breach of contract.

sustained personal injuries on January 23, 1996 when she was attempting to rise from a Canterbury chair on display in Sears' Wilmington, Delaware store. (Exhibit B).

The Complaint in the underlying action alleges negligence against Sears for allowing the aforesaid Canterbury chair to remain on display in a defective condition. For instance, the Complaint states:

> The aforesaid accident was caused by the negligence, carelessness, recklessness, wilfulness and wantonness of the defendant and consisted of the following:
>
> > (a)     failing to maintain the said chair in a condition which would protect and safeguard persons attempting to get up from said chair;
> >
> > (b)     permitting the said chair to remain in a condition so as to constitute a menace, danger, nuisance, snare and trap to persons, business invitees, guests and/or pedestrians attempting to get up from said chair'
> >
> > (c)     failing to have said chair inspected at reasonable intervals in order to determine if it was in a safe condition and/or location;
> >
> > (d)     failing to give notice or warn persons, business invitees, guests and/or pedestrians utilizing such chair of the dangerous and perilous condition of the chair;
> >
> > (e)     disregarding the rights and safety of the plaintiff utilizing said chair.

(Exhibit B).

Sears obtained a vendor's endorsement issued by One Beacon, pursuant to the terms of the contract between defendant, Winston Furniture Company, Inc., ("Winston"), and Sears, according to which Winston agreed to supply certain products to Sears, including Canterbury chairs, and procure insurance coverage for Sears.

On October 6, 2000, Sears forwarded a copy of the Complaint in the underlying action, to One Beacon, placing One Beacon on notice of Sears' claim of coverage under the policy. Following Sears' October 6, 2000 notice of claim, One Beacon denied the existence of the vendor's endorsement.

One Beacon continued to deny the existence of the vendor's endorsement for more than two and one half years. One Beacon even denied the existence of the vendor's endorsement in its answer to the Complaint, stating: "denied that a vendor's endorsement naming Sears as an additional insured exists or was ever issued by One Beacon." (Docket 02-CV-03461, no. 5).[2]

Because of One Beacon's long-term denial of the existence of the vendor's endorsement, Sears conducted extensive written discovery against One Beacon. For instance, Sears served One Beacon with a pre-litigation subpoena for the vendor's endorsement and other policy documents. Following the commencement of litigation, Sears served One Beacon with requests for admission, interrogatories and document requests.

One Beacon resisted answering Sears' discovery. For instance, despite numerous verbal and written requests, One Beacon failed to provide a substantive reply to Sears' pre-litigation records subpoena, necessitating a motion to hold One Beacon in Contempt: The Court issued the December 18, 2001 Order, requiring One Beacon to comply with the subpoena. (Docket 98-CV-00249, no. 11). One Beacon also failed to answer Sears' interrogatories and document requests. After approximately three and one half months and numerous requests for One Beacon's answers, Sears filed a motion to compel, which the Court granted by Order dated March 6, 2003. (Docket 02-CV-3535, no. 4).

---

[2]        Persuasive evidence of bad faith.

Moreover, because One Beacon denied that Winston obtained the insurance coverage for Sears, Winston was named as a defendant in this action for failing to obtain the contractually required insurance coverage.

In June, 2003, One Beacon finally admitted that it did issue the vendor's endorsement to the policy, naming Sears as an additional insured.  One Beacon's admission is in its May 22, 2003 correspondence, (post-marked June 13, 2003). (Exhibit D).

However, even after finally admitting to the existence of the vendor's endorsement,  One Beacon attempted to negotiate Sears into agreeing to coverage limitations that do not exist in the vendor's endorsement. For instance, One Beacon offered to defend Sears subject to a reservation of rights under which One Beacon would withdraw from defending Sears and deny indemnity unless the facts in the underlying action establish that the plaintiff's injuries were caused by a product defect. (Exhibit D).

## II.    <u>SUMMARY OF ARGUMENT</u>

The vendor's endorsement states:

> WHO IS AN INSURED (section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions....

(Exhibit C).

Sears is entitled to an unqualified defense under the terms of One Beacon's vendor's endorsement. That vendor's endorsement provides coverage for injuries arising out of the Canterbury chair. Courts that have interpreted the language One Beacon uses in the vendor's endorsement hold

that coverage is owed for injuries incidental to or originating from the product, even if the injuries were not proximately caused by the product. The phrase, "arising out of," is broadly interpreted to require nothing more than "but for" causation. Courts expressly hold that coverage is not limited to claims of a product defect and coverage is owed where negligence is found to be a proximate cause of the injuries, as long as the injuries arise out of the product.

One Beacon did not include the word, "defect," in its vendor's endorsement. Moreover, One Beacon's vendor's endorsement contains detailed coverage exclusions but does not exclude coverage where negligence is a proximate cause of the alleged injuries. Now, after One Beacon denied the existence of the vendor's endorsement for more than two and one half years, it takes the position that the Court should re-write the vendor's endorsement to add the word, "defect."

## III.    <u>ARGUMENT</u>

Under Pennsylvania law, the Court has the duty of interpreting insurance contracts. *CGU Ins. v. Tyson Assoc.*, 140 F. Supp. 2d 415, 418 (E.D. Pa. 2001), *citing Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts and Youngs, P.C.*, 821 F.2d 216 (3rd Cir. 1987).

One Beacon's vendor's endorsement provides coverage for injuries arising out of the Canterbury chair. (Exhibit C). The Pennsylvania Supreme Court interprets the phrase, "arising out of," to require "but for" causation, i.e., casually connected with, not proximately caused by. *McCabe v. Old Republic Insurance Company*, 298 A.2d 901, (Pa. 1967). In *McCabe*, a contractor, (McCabe), was a defendant in a wrongful death action, brought by the estate of McCabe's employee, killed while working on a construction project. *Id.* at 902. McCabe paid a judgment in that action and filed suit against its insurer, Old Republic, to compel Old Republic to provide coverage. *Id*. at 903. At issue was an exclusionary provision in the policy, excluding coverage for, "injury or death of an employee arising out of and in the course of his employment by the insured." *Id*. The trial court

ruled that the exclusionary clause precluded coverage. The Supreme Court found that the fatal injury arose out of the deceased employee's employment and thus affirmed, quoting *Manufacturers Cas, Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571 (Pa. 1961): "arising out of means causally connected with, not proximately caused by. But for causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy." *Id*. (citations, quotations and emphasis deleted).

In *Manufacturers Cas, Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571 (Pa. 1961), a declaratory judgment action, the policy provided coverage for damages, "arising out of the ... use of the automobile or trailer." *Id*. at 572. The trial court interpreted the phrase, "arising out of," to mean "proximately caused by." The Supreme Court expressly disagreed with that interpretation,[3] found the phrase to be vague and ambiguous and stated:

> When the provisions of an insurance policy are vague or ambiguous, they must be construed strictly against the insurer and liberally in favor of the insured. Had the insurer desired to limit its liability to accidents with such a close causal connection to the ... use of the trailer as to be encompassed within the scope of proximate causation, it could have and should have so stated in its policy. Construed strictly against the insurer, arising out of means causally connected with, not proximately caused by. But for causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy.

*Id*. at 573 (quotations omitted).

The Third Circuit holds that the aforesaid "but for" test enunciated in *McCabe v. Old Republic Insurance Company*, *supra*, is the law of Pennsylvania when interpreting the "arising out of language" in an insurance contract. *See Forum Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80, 82 (3rd Cir.

---

[3]    The Supreme Court found no coverage because the policy requirement of permissive use was not satisfied. *Id*. at 573.

1989), where the Third Circuit states: "The dissent's suggestion that the 'but for' test enunciated in *McCabe* is not the law of Pennsylvania is simply wrong." *Id.* at 82.

The Honorable Robert F. Kelly of the United States District Court for the Eastern District of Pennsylvania recently cited Pennsylvania Court decisions holding that the phrase, "arising out of," in insurance policies requires but for causation and means causally connected with, not proximately caused by. *CGU Ins. v. Tyson Assoc.*, 140 F. Supp. 2d at 420). *See also, Polyak v. Israelson*, 348 F. Supp. 529, 531 (W.D. Pa. 1972) (Insurance contract provision, "arising out of," means causally connected with, not proximately caused by, and requires only but for causation to satisfy the policy provision); *Lehrer/McGovern v. W.C.A.B. (Sinclair)*, 720 A.2d 853 (Pa. Cmwlth. 1998) (same).

Here, the vendor's endorsement provides coverage for bodily injury arising out of one of Sears' products, i.e., the Canterbury chair. (Exhibit C). Plaintiff alleges that her injuries occurred when she was attempting to get up from the chair and it slid out from under her. (Exhibit B). The causal connection between the chair and the alleged injuries is more than sufficient to satisfy Pennsylvania's "but for" requirement as set forth in the above cited authorities: But for plaintiff's use of the Canterbury chair, the alleged injuries would not have occurred.

The Superior Court of New Jersey, Appellate Division, has recently interpreted the exact same vendor's endorsement language that is at issue in this case. In *Pep Boys v. Cigna Indem. Ins. Co.*, 692 A.2d 546 (N.J. Super. A.D. 1997), Pep Boys sought a declaration that Cigna owed a defense and indemnity to Pep Boys pertaining to an underlying action. In that underlying action, the minor plaintiff/decedent, purchased cans of freon from the defendant, Pep Boys, in order to get "high." Pep Boys failed to question the minor about his age or ask for identification. *Id.* at 547. The can of freon contained a warning that inhalation could cause death, but the minor inhaled the freon and died. *Id.*

The decedent's estate filed suit against Pep Boys, alleging causes of action in negligence for the sale of freon to a minor in violation of a New Jersey statute, negligence in training the store personnel, and reckless indifference by Pep Boys to the harm that could be caused by freon. *Id*. The plaintiff did not assert any form of product liability claim and did not sue the product manufacturer. *Id*. Pep Boys settled the underlying action while the declaratory judgment action was pending. *Id*.

At the time of the sale of the freon in *Pep Boys v. Cigna Indem. Ins. Co.*, the manufacturer of the freon had a Cigna insurance policy, which included a vendor's endorsement covering vendors such as Pep Boys.  The language of Cigna's vendor's endorsement states:

> WHO IS AN INSURED (section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" *arising out of* "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions....

*Id*. at 548 (emphasis in original). Cigna denied Pep Boys' request for coverage on the grounds that the decedent's death was caused by Pep Boys' negligence and did not arise out of the freon. *Id*. at 547, 548. The trial court agreed, stating:  "the alleged problem was not the product but rather its sale to a minor. "  *Id* at 548.

The Appellate Division in  *Pep Boys v. Cigna Indem. Ins. Co.*, reversed the trial court's decision and held that Pep Boys is entitled to defense and indemnification for the underlying action, citing *McCabe v. Old Republic Insurance Company*, *supra*, for the Pennsylvania Supreme Court's holding that "arising out of" means causally connected with, not proximately caused by. *Id* at 549.

-8-

The Appellate Division in *Pep Boys v. Cigna Indem. Ins. Co.*, expressly states that the vendor's endorsement does not limit coverage to cases involving product defects and does not preclude coverage where the insured's negligence is a proximate cause of the injury:

> In the present case, [the] freon killed decedent. There may have been a basis for imposing liability on Pep Boys for its negligence, but the product was the death-causing substance, Morever, as *Sportmart*[4] noted, the endorsement, though it contains a page of detailed and specific exclusions, does not exclude coverage if the vendor's negligence is a proximate cause of injury. Nor does the endorsement limit its coverage to claims of manufacturing or design defects, or failure to warn.

*Id.* at 550.

In *Pep Boys v. Cigna Indem. Ins. Co., supra,* and this case, the plaintiffs in the underlying actions allege injury involving the use of a product, caused at least in part by the negligence of the insured retailer. One Beacon uses the exact same vendor's endorsement language as Cigna used. *Pep Boys v. Cigna Indem. Ins. Co.*, *supra* at 548; (Exhibit C). The New Jersey Appellate Court holds that the vendor's endorsement used by Cigna and One Beacon broadly provides coverage for bodily injury arising out of the products and does not limit coverage to claims of product defect. *Pep Boys v. Cigna Indem. Ins. Co., supra*.

Nor does the vendor's endorsement exclude coverage where the insured's negligence is a proximate cause of injury. *Pep Boys v. Cigna Indem. Ins. Co.*, *supra*. at 550. In fact, One Beacon's vendor's endorsement lists detailed and specific exclusion, (Exhibit C), which are identical to Cigna's exclusions. *Pep Boys v. Cigna Indem. Ins. Co.*, *supra*. at 448. One Beacon elected not to expressly exclude coverage where the insured's negligence is a proximate cause of injury.

---

[4]    *Sportmart, Inc. v. Daisy Mfg. Co.*, 268 Ill. App. 3d, 974, 206 Ill. Dec. 355, 645 N.E. 2d 360 (1994)

In *Sportmart, Inc. v. Daisy Mfg. Co.*, 268 Ill. App. 3d, 974, 206 Ill. Dec. 355, 645 N.E. 2d 360 (1994), a retailer, Sportmart, Inc., brought a declaratory judgment action against Continental Casualty,[5] seeking a determination that Continental owed defense and indemnity to Sportmart in a personal injury action involving a Daisy product sold by Sportmart. *Sportmart, Inc. v. Daisy Mfg. Co.*, 645 N.E. 2d at 361. Sportmart sold BB guns and pellet ammunition manufactured by Daisy. Daisy maintained an insurance policy issued by Continental, containing an additional insured vendor's endorsement, providing coverage for vendor's of Daisy's products. *Id.* at 361. The language of the vendor's endorsement states:

> WHO IS AN INSURED ... is amended to include as an insured any [vendor] ..., but only with respect to 'bodily injury' or 'property damage' *arising out of '[Daisy products]'...* which are distributed or sold in the regular course of the vendor's business.....

*Id.* at 363 (emphasis in original).

According to the facts of the tort action underlying *Sportmart, Inc. v. Daisy Mfg. Co.*, *supra*, the minor plaintiff alleged that he was shooting a BB gun, using pellets that he purchased from Sportmart. A pellet ricocheted off of a light pole and struck the minor plaintiff in the eye. *Id* at 362.

The Complaint against Sportmart in the tort action underlying *Sportmart, Inc. v. Daisy Mfg. Co.*, *supra*, alleged negligence against Sportmart for selling the ammunition to a minor. *Id.* The Complaint does not contain any allegations of product liability. *Id.* Sportmart tendered its defense, pursuant to the vendor's endorsement, to Daisy and Continental, who rejected the tender, on the basis that the underlying Complaint was premised on Sportmart's negligence in selling ammunition rather than on a product defect, thus there is no coverage under the vendor's endorsement. *Id.*

---

[5]    Daisy Manufacturing was also named as a defendant.

In Sportmart's declaratory judgment action, Continental moved for summary judgment, arguing that the vendor's endorsement covered only injuries resulting from a product defect. Sportmart filed a cross-motion for summary judgment, arguing that it is entitled to coverage for any injury arising from the product, regardless of whether any defect is alleged. *Id.* The Trial Court granted summary judgment in favor of Continental and against Sportmart. *Id.* The Appellate Court framed the issue on appeal as: "The primary issue on appeal turns upon the meaning of the phrase "arising out of" in the vendor's endorsement." *Id.* The Appellate Court reversed the Trial Court's decision, and ordered summary judgment in favor of Sportmart and against Continental on the duty to defend issue.[6] In reversing, the Appellate Court stated that coverage afforded under the "arising out of " language is broad and not limited to claims of product defect, the policy does not contain an exclusion where the injury stems both from the product and the negligence of a party, and the injury to the minor plaintiff would not have occurred but for his use of the pellet ammunition:

> The phrase 'arising out of' repeatedly has been recognized as being broad as well as vague.... It must therefore be construed strictly against the insurer.... In worker's compensation claims and insurance litigation, this language is considered satisfied by a mere causal connection and does not necessarily require proximate causation.... Synonymous with 'arising out of' are the terms 'connected with,' 'incidental to,' 'originating from,' 'growing out of,' and 'flowing from.'...
>
> **...**
>
> Contrary to defendant's position in this case, there is nothing in Continental's policy limiting coverage to claims alleging a product defect. Further, provided the product is sold in the same condition as when it

---

[6] No decision was reached on the issue of indemnity in the event a judgment were to be entered against Sportmart in the underlying tort action. *Id.*

> left Daisy's control, there is no policy exclusion for
> injuries directly caused by the product which are also
> attributable to the negligence of another party.
> Therefore, the broad language must be construed
> against the insurer to require coverage for all bodily
> injury 'growing out of' or resulting from Daisy's
> product.... Indisputably, [the minor plaintiff's] injury
> would not have occurred but for his use of the pellets.

*Id. See also, Atlantic Mutual Companies v. Home Depot U.S.A., Inc.*, 2003 WL 202607 (D. Kan)

(Holding that coverage is owed for injuries stemming from the insured's negligent assembly of a

product display, stating that the court is persuaded by the broad interpretation of the "arising out of"

language set forth in *Sportmart, Inc. v. Daisy Mfg. Co., supra* and also citing *Pep Boys v. Cigna*

*Indem. Ins. Co., supra*, for the proposition that the insurer has the option to expressly preclude

coverage where the vendor's negligence is a cause of injury and to limit coverage to product defects);

*Kmart Corporation v. Fireman's Fund Insurance Co.*, 88 F. Supp.2d 767 ( E.D. Mich. 2000)

(Coverage owed for injuries stemming from the insured's negligent assembly of patio chairs. The

term, "arising out of," means "originating from," having its origin in," "growing out of," "flowing

from," "incidental to," or "having a connection with").

## IV.    **CONCLUSION**

Sears is entitled to an unqualified defense under the terms of One Beacon's vendor's

endorsement. That vendor's endorsement provides coverage for injuries arising out of the Canterbury

chair. Courts that have interpreted the language One Beacon uses in the vendor's endorsement hold

that coverage is owed for injuries incidental to or originating from the product, even if the injuries

were not proximately caused by the product. The phrase, "arising out of," is broadly interpreted to

require nothing more than "but for" causation. Courts expressly hold that coverage is not limited

to claims of a product defect and coverage is owed where negligence is found to be a proximate cause of the injuries, as long as the injuries arise out of the product.

For well over three years, One Beacon has dodged and evaded its contractual duties owed to Sears: One Beacon denied the existence of the vendor's endorsement for more than two and one half years, forced Sears to conduct extensive discovery, file two discovery motions and join Winston as a defendant in this case. Now, One Beacon admits that it issued the vendor's endorsement naming Sears as an additional insured but refuses to provide the coverage afforded under the endorsement. Instead, One Beacon attempted to negotiate Sears into accepting coverage limitations that do not exist in the vendor's endorsement and would ask the Court to re-write the vendor's endorsement to add the word, "defect."

For all the foregoing reasons, plaintiff, Sears, Roebuck and Co. respectfully request that the Court grant summary judgment in its favor on Counts I and II of the Complaint and enter the proposed Order.

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY

BY: _____
        Robert L. Sanzo, Esquire
        *Attorneys for Plaintiff,*
        *Sears, Roebuck and Co.*

DATE: _____

-13-

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, *Plaintiff's, Sears, Roebuck and Co., Motion For Partial Summary Judgment Against Defendant, One Beacon Insurance Group and supporting Memorandum of Law*, was forwarded to the below listed counsel by First Class mail, postage pre-paid, on the date indicated below.

Joseph P. Connor, III, Esquire
CONNOR WEBER & OBERLIES
171 West Lancaster Avenue
Paoli, PA 19391

and

Fred Buck, Esquire
RAWLE & HENDERSON
The Widener Building
One South Penn Square
Philadelphia, PA 19107

**LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY**

BY: _____

Robert L. Sanzo, Esquire
Attorney for Plaintiff,
Sears Roebuck and Co.

Date:   February 2, 2004